In the matter of the probate of the will of MARY GORDON DYER, deceased.

[Argued February 7th, 1944. Decided April 13th, 1944.]

*Messrs. Harrison & Roche & Darby* and *Mr. Byrd D. Wise* (of the New York bar), (*Mr. Robert F. Darby* and *Auguste Roche, Jr.*, of counsel), for the respondents.

*Mr. George W. C. McCarter*, for the contestant.

The opinion of the court was delivered by

RAFFERTY, J.

Mary Gordon Dyer was the mother of Millicent Dyer Mingle and Richard Taylor Dyer. For many years Richard Taylor Dyer was a resident of France. He was injured in an automobile accident in that country in 1935 and as a result thereof came to New York City for hospitalization and died in that city in January, 1936. At the time of his death his wife was pregnant with child and this child, Richard Gordon Dyer, was born posthumously in April, 1936. In his will he expressed knowledge of his wife's pregnancy

and provided that the birth of the child should not in any way alter or affect his testamentary disposition. He provided that his entire estate should go to his wife but that in the event she should not survive him, then his estate would go to his children in equal shares. He provided also for the appointment of a guardian of the property of the minor children in the event of the deaths of himself and his wife prior to the children reaching their majority.

Mary Gordon Dyer executed her will on June 9th, 1936, and, aside from a small bequest to an employee, gave her entire estate to Millicent Dyer Mingle. She died August 10th, 1942, and was survived by Mrs. Mingle.

The paragraph of the will of Mrs. Dyer which gives rise to this litigation states:

> "*Fifth:* I do not make provision in this my will for the issue, if any, of my deceased son, Richard Taylor Dyer, and his widow, Betty Ross Dyer, inasmuch as he left them amply provided for."

Upon the probate of this will in the Essex County Surrogate's Court the widow of Richard Taylor Dyer, having qualified as next friend of Richard Gordon Dyer, appealed therefrom to the Essex County Orphans Court upon the grounds that the will was the product of undue influence exercised upon Mrs. Dyer by Mrs. Mingle; that the execution of the will was obtained by the fraudulent misrepresentation made by Mrs. Mingle to her mother that Richard Gordon Dyer had been amply provided for under the will of his father; and, finally, that the execution of the will was the result of a material mistake on the part of Mary Gordon Dyer, in that Richard Gordon Dyer had not been amply provided for under the will of his father.

Upon the matter coming on to be heard in the Orphans Court it was shown that a preliminary draft of will had been prepared for Mrs. Dyer by eminent counsel which provided for setting up a trust fund of $50,000 for the benefit of Richard Gordon Dyer upon the provision that should he die before attaining the age of eighteen years, the fund was to be paid thereupon to Mrs. Mingle. This draft of will was delivered to Mrs. Dyer and several days later she returned

it to her attorney with the paragraphs referring to the trust fund stricken out. There was also a notation written by Mrs. Dyer on the face of the draft of will as follows: "All my property except 2000 for Millicent." Accompanying the return of the corrected draft was a note written by Mrs. Dyer as follows:

"If you cut out all I have drawn the ink through I am leaving every thing to Millicent except the 2000 00 for William. So cut out all the other items and have it ready Tuesday morning and I will come in and sign. Let me know the time Richard left plenty
                    Yours truly
                              MARY GORDON DYER"

A new draft of will was prepared in accordance with these instructions and forwarded to Mrs. Dyer. Several days later she requested her attorney to present himself at the offices of Fidelity Union Trust Company, in Newark, where the will was executed by Mrs. Dyer in the presence of two executive officers of that company and her counsel.

A careful reading of the testimony gives no support to the charges made in the grounds of appeal. There is no particle of testimony tending to show that Mrs. Mingle exercised any undue influence whatsoever upon her mother in this matter, nor that she made any representation to her mother one way or the other pertaining to the testamentary disposition of her brother. To the contrary, it was clearly evidenced that, although advanced in years, Mrs. Dyer was of an alert mentality and of strong will. There is no testimony to indicate that she was in any manner dependent upon or subject to the judgment or the will of her daughter. It does appear that Mrs. Mingle had a personal hostility toward her brother and sister-in-law, and that testatrix sought to avoid any occasion of meeting between them and that this matter gave testatrix considerable uneasiness. But we may not infer from this circumstance that Mrs. Dyer was coerced thereby to make a testamentary disposition contrary to her real desire and purpose, but in conformity to a domination and influence of Mrs. Mingle. *In re Neuman, 133 N. J. Eq. 532.* Mrs. Dyer had the undoubted right to dispose of her property as it suited her. The fact that she changed her

mind with reference to the grandson between the making of the first and second drafts of her will is, in this case, a matter of only slight, if any, importance. What influenced this action does not appear and we may not speculate thereon. It must be concluded that the learned trial judge appropriately dismissed the appeal.

Appeal being made to the Prerogative Court, that court affirmed the disposition made in the Orphans Court. The learned Vice-Ordinary said:

"There is of course, no direct evidence and there is very little circumstantial evidence, to support this theory [fraud or undue influence]. There is no proof that Mrs. Mingle generally dominated her mother, or even that she saw her, or was at their home in East Orange in the month preceding the execution of the will."

Upon appeal to this court the charge of mistake is abandoned.

It is argued that the reason given by Mrs. Dyer in not providing for her grandson, was a false reason in that Richard Taylor Dyer did not in fact provide for his son, but left his entire estate to his widow, and also that because Mrs. Mingle, who lived with her mother, had an opportunity to exercise undue influence, the burden of proof shifted and it became incumbent upon the proponents to disprove undue influence. But the reason given by testatrix is not demonstrably false. It is apparently false only. It is a commonplace for a husband and father to leave his entire estate to his surviving widow depending upon the ties of natural love, affection and jealousy for the proper care and upbringing of their children out of the estate that he leaves. Opportunity to exercise undue influence in itself is not sufficient. Some other hostile element must exist to support this contention. *In re Neuman, supra.* We have given careful attention to the other points of argument made on behalf of contestant and have examined the authorities offered to sustain the contentions made, but find in them nothing to persuade us otherwise.

We are satisfied that on the meritorious issue the decree appealed from should be affirmed.

The executors of the estate of Millicent Dyer Mingle, who

died ten days after the death of her mother, appeal from the allowance of counsel fee to proctors for appellant in the Orphans Court and in the Prerogative Court, upon the contention that contestant had no reasonable cause for contesting the validity of the will of Mrs. Dyer. *R. S. 3:2-51.*

Bearing in mind that in the first instance the purpose of the litigation was to determine the rights, if any, which existed or might exist in favor of the infant party, the action of the Orphans Court in awarding counsel fee was proper. In the circumstances of the case it was a provident action to explore the factual situation for a determination of the substantial rights of the infant. "But, having taken the judgment of the court of first instance upon the question, an appeal to the Prerogative Court stands in a somewhat different position, and costs and counsel fees out of the estate will be denied in this court [Prerogative Court] if, in its opinion, the case made in the Orphans Court demonstrated there was no reasonable ground for the appeal to" the Prerogative Court. *In re Wandell, 92 N. J. Eq. 195, 200.* We conclude that there was no reasonable ground for appeal to the Prerogative Court in this case; that the representatives of the infant party should have rested on the decree of the Orphans Court, and that the allowance of counsel fee in that court was improper.

The decree appealed from is affirmed, with the exception that the portion thereof which allows counsel fees to proctors to contestant in the Prerogative Court is reversed. *In re Raynold's Estate, 133 N. J. Eq. 342.*

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, WELLS, RAFFERTY, HAGUE, DILL, JJ. 13.

*For reversal*—None.

As to counsel fees—

*For affirmance*—DONGES, PERSKIE, COLIE, WELLS, DILL, JJ. 5.

*For modification*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, HEHER, PORTER, RAFFERTY, HAGUE, JJ. 8.